MIDDLEBROOKS, District Judge,
concurring in part and dissenting in part.
I concur in Part II of the majority’s opinion. I also agree with the majority’s analysis and conclusion insofar as Wangenstein’s objectively verifiable medical conditions—cervical spondylosis and myelopathy—are concerned. I dissent from Parts I and III of the opinion, however, because I believe that KNS unreasonably dismissed or otherwise failed to evaluate Wangenstein’s claim of disability due to migraine[1] solely on the basis that she submitted no objective evidence to prove it.
In her November 16, 1999 application for disability benefits, Wangenstein described her “illness/injury” as including both objectively verifiable conditions, such as degenerative disc disease, and the subjective condition of “migraine.” KNS awarded Wangenstein “own occupation” benefits only after an IME concluded that she was partially disabled due objectively verifiable conditions of which she was complaining.[2] Nevertheless, the record shows that Wangenstein sought and received treatment for migraines at the same time, and continued to do so throughout KNS’ evaluation of her eligibility for benefits.
Monthly records reflect that Wangenstein regularly complained of recurring and disabling migraines, including symptoms of severe pain, vomiting, and sensitivity to light and sound.[3] Wangenstein’s migraines were at times her chief complaint, sometimes appeared to aggravate her other medical problems, and from time to time seemed “under control” with medication.
On January 11, 2000, Dr. Iyer wrote that Wangenstein reported having one to two migraines per week that are “controllable,” *915 [4] although, even with medication, “when the migraine comes, she cannot handle it ... she is throwing up ... she is overall affected by pain in the right side of her face ... [she] is unable to function and take care of her daily activities.” As of April 19, 2000, Dr. Iyer noted that Wangenstein continued to report near-daily headaches, and that the injections she received from him for the pain only “tend[ed] to keep her away from the emergency room.” On July 11, 2000, Wangenstein reported that following treatment she would do well for about a week or so. On July 18, 2000, Wangenstein returned to the doctor’s office, stating that she was anxious and could not even sit because of a migraine. In addition to severe pain, Wangenstein reported that she was also experiencing vomiting and shaking.
On July 25, 2000, a year after Wangenstein began disability leave, Dr. Iyer wrote to KNS that Wangenstein’s “right hemicranial, right opthalmic migraine,” which the doctor described as “persistent and permanent,” was complicating her other medical conditions. He concluded that she was not capable of working, and was in need of chronic pain management and oral medication.
Dr. Iyer treated Wangenstein’s migraines with an array of pain medication administered orally and by injection. Her response to the treatments varied. On March 19, 2001, Wangenstein reported that she was on the fourth day of a migraine attack, and was able to get over the “crisis” only after taking Imitrex both orally and by injection. In a May 8, 2001 KNS questionnaire, Wangenstein wrote: “Because of constant pain in face, eye and head, vomiting and hot and cold sweats from pain, I am constantly in bed all day, I only go out of the house when I have a doctor’s appointment.” At what may have been her highest point, in July 2002 Wangenstein reported that “she had not had any headaches for at least four days,” and that this was “the best she ha[d] ever felt.” Wangenstein and her doctor discussed reducing her narcotic intake and treating her with methadone, but Wangenstein hesitated because she feared that she would be in “horrendous pain.” In September 2002, after an attempt to modify the medicinal regimen, Wangenstein found that she could not tolerate the methadone. She reported that “the pain is constant. She has been vomiting and nauseated for the last five days. The Imitrex is not helping.” Wangenstein also complained that she could not sleep because the pain would wake her up. At that point, in addition to other medications, she and her doctor discussed “[t]he possibility of hospitalization for intractable migraines[.]”
In October 2002, Wangenstein reported that although the current medication and treatment plan were helping, she knew she would have to deal with the inability to control migraines all of her life. In November 2002, Wangenstein again discussed chronic headaches and migraine. Dr. Iyer noted that although Wangenstein “controls the migraines with Imitrex shots ... [t]here is no way she can reduce any pain medication. She is not getting any relief.” Wangenstein described feeling “normal” by 6:00 PM, “but [that] all morning [she] is miserable because of the ongoing headaches.” Wangenstein reported that “by the third day of the attack, she is okay, but she still has daily headaches.”
On February 4, 2003, Dr. Iyer again wrote to KNS that Wangenstein’s chronic, intractable and debilitating migraines, *916 which she had been struggling for years to control, rendered her totally disabled. Dr. Iyer wrote that she would require regular treatment and care just to be able to take care of personal affairs.
Even when Wangenstein stated, during an April 2003 employability assessment, that she could perform basic activities of “daily living and personal care,” she described that “her typical day is to stay in bed all day long due to her constant pain in her face, eyes and head,” and that she only left the house when necessary to go to the doctor.
On May 1, 2003 Dr. Iyer wrote to KNS that Wangenstein’s migraines were debilitating and intractable. Dr. Iyer stated that he recommended no employment because Wangenstein’s condition is debilitating, chronic, and progressively getting worse.
Although, as the majority has shown, KNS thoroughly reviewed Wangenstein’s claim of cervical spondylosis and myelopathy, KNS did not fairly consider all relevant evidence regarding Wangenstein’s claim of disability due to migraine. Instead it disregarded symptoms and medical evidence that it found to be purely “subjective,” including the extensive documentation of Wangenstein’s complaints of—and treatment for—disabling migraine. KNS’ Peer Reviewers based their conclusions as to whether Wangenstein was disabled on the sufficiency of the objective data.[5] While in its benefits denial letter KNS devoted several paragraphs to explaining how it found insufficient objective evidence of a functional impairment related to Wangenstein’s cervical spine condition, it only mentioned Wangenstein’s “anti-migraine therapy” in passing. KNS’ denial letter and subsequent correspondence affirming the denial of benefits did not discuss the evidence regarding her migraine symptoms at all.[6]
I disagree with the majority’s conclusion that KNS was entitled to dismiss evidence of Wangenstein’s disabling migraines solely on the basis that it was subjective, and to insist on objective evidence instead. As counsel for Lumbermens acknowledged at oral argument, no language in the Plan requires a claimant to furnish objective evidence to prove a claim of disability.[7] Rather, it only states that a claimant must provide “proof that you are unable to work due to sickness or injury,” and that the proof must be “written.” Nowhere in the Plan is “proof’ defined to exclude evidence based on subjective reports. Other than with regard to conditions which fall under the rubric of mental health, the Plan does not limit or exclude benefits for primarily subjective conditions. Dr. Iyer’s statements that additional testing would be *917 “normal” because there is no objective diagnostic tool for migraines, and that there was no other documentation he could have provided to prove that condition, are uncontested in the record.[8]
It is worth noting that Wangenstein’s claim of debilitating migraines is not controverted in this record. Although KNS’ peer reviewers found no objective medical evidence to support her claim of disability, none of them concluded that her reported symptoms were inconsistent with migraine, or that her migraine diagnosis was inconsistent with her other diagnoses. There is no video surveillance or other evidence contradicting Wangenstein’s claims as to her limitations due to recurring migraine attacks and related symptoms. No examining physician has opined that she is a malingerer.[9]
Unlike the majority, I believe that the central analysis in Mitchell is instructive here. In Mitchell, the Third Circuit held that it was arbitrary and capricious for an administrator to deny benefits for failure to submit “objective evidence,” where the undisputed evidence showed that Mitchell suffered from chronic fatigue syndrome that precluded him from working; the plan only required Mitchell to show he was disabled, not to supply clinical evidence of the disease; and there was no more objective evidence Mitchell could have submitted given the absence of any “dipstick” test in the medical community for the syndrome, even though it is universally recognized as a severe disability. See also Cook v. Liberty Life Assurance Co. of Boston, 320 F.3d 11, 21 (1st Cir.2003)(given that chronic fatigue syndrome was not verifiable by laboratory findings, it was not reasonable for administrator to require objective evidence of the condition where no contrary medical evidence was in the record).
Here, the evidence pertaining to Wangenstein’s claim of disability due to migraine was not controverted, but simply dismissed or disregarded because it was “subjective.” Dr. Iyer’s statement that no objective diagnostic tool existed for the migraine condition was not rebutted. KNS’ Plan did not require objective proof or otherwise exclude benefits for subjective conditions. I believe that KNS’ denial of benefits under these circumstances was arbitrary and capricious.[10] See also Van Cleave v. United States, 70 Fed.Cl. 674 (2006)(military board’s finding that claimant’s subjective reports were insufficient to *918 establish migraine condition for purposes of disability rating was unreasonable where claimant was diagnosed with and treated for migraine, and record did not show any objective test for migraine).
Because KNS failed to consider all relevant evidence and unreasonably construed the Plan as to require objective evidence of a subjective condition, I would reverse. I would not, however, substitute my judgment for that of the administrator to conclude that Wangenstein has proven her claim based on this record. Rather, I would remand the matter to KNS for consideration all relevant evidence regarding Wangenstein’s claim of disability due to migraine. See, e.g., Rekstad v. U.S. Bancorp, 451 F.3d 1114, 2006 WL 1689217 at *5-6 (10th Cir.2006)(remanding benefits denial after finding that administrator failed to examine and give full and fair consideration to material portion of the relevant evidence).

. Migraines are "episodic, disabling headaches that may recur over years” and can be debilitating. Sharon Parmet, Headaches, 295 J. Am. Med. Ass’n 2320 (May 17, 2006). They are often associated with irritability, nausea, vomiting, constipation or diarrhea, and sensitivity to light or sound. Dorland’s Illustrated Medical Dictionary 1042 (28th ed.1994).

. Dr. Patel noted cervical and lumbosacral spasm, and a limited range of motion.

. Women who, like Wangenstein, are between the ages of 50 and 64 and suffer from migraines average the highest number of bedridden days per year and the greatest length of bed rest for migraines compared to other groups. X. Henry Hu, et al., Burden of Migraine in the United States, 159 Arch. Intern. Med. 813 (Apr. 26, 1999).

. Although the majority read this note as stating that the medication actually controlled the migraine headaches, I find Dr. Iyer’s use of the word "controllable” to reflect a statement of opinion as to the potential of the medication's efficacy.

. That KNS’ Peer Reviewers may have briefly acknowledged Wangenstein’s migraine complaints and diagnosis does not constitute fair consideration of that evidence, given their insistence on objective documentation to establish her disability.

. Compare Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228 (4th Cir.1997)(affirming denial of benefits where medical consultants considered both objective and subjective evidence, and concluded claimant had sufficient functional capacity to work after assuming the accuracy of her self-reported symptoms and certain possible diagnoses which could not be verified). Note that in Ellis, the claimant’s own physicians’ reports were conflicting, and one of her examiners had suggested the possibility that she was embellishing her symptoms.

. Compare Boone v. Liberty Life Assurance Co. of Boston, 161 Fed.Appx. 469, 472 (6th Cir.2005)(administrator entitled not to credit doctor’s conclusions that claimant was disabled where those conclusions were not supported by objective medical evidence and plan defined proof of disability as requiring "objective medical evidence”). See also Frost v. Intel Corp., 37 Fed.Appx. 295 (9th Cir.2002).

. I disagree with the majority's assessment that Wangenstein was not excused from providing the additional medical documentation KNS’ peer reviewers sought. Although the Plan authorizes the administrator to require “any other proof we reasonably believe is necessary to evaluate your claim,” it would not be reasonable to require a claimant to undergo, at her own expense, additional medical testing unrelated to the claimed disabling condition, where, as here, there is unrebutted evidence that additional testing would not prove the disability.

. I find Dr. Goldberg’s statement that "it is difficult to separate what might be organic and what might be related to her attempts to get on disability for her ongoing subjective symptoms” to reflect his rejection of subjecfive evidence as adequate to establish disability. Dr. Goldberg, who only reviewed the paper record, did not have the benefit of examining Wangenstein in order to make any sort of credibility determination as to her subjective complaints. See, e.g., Smith v. Continental Casualty Co., 450 F.3d 253 (6th Cir.2006)(finding that credibility determination regarding subjective complaints without the benefit of a physical exam supported a finding that benefits determination was arbitrary).

. Wangenstein's case is perhaps more complex than Mitchell’s, in a sense, because she also suffers from objectively verifiable conditions, the evidence of which KNS reasonably concluded did not support a finding of disability.