**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 7, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

TRACY LEACH,

　　　　Plaintiff-Appellant,

　v.

CONTINENTAL CASUALTY
COMPANY,

　　　　Defendant-Appellee.

No. 06-3148
(D.C. No. 04-CV-1358-JTM)
(D. Kan.)

---

**ORDER AND JUDGMENT** [*]

---

Before **HOLMES**, **McKAY**, and **BRORBY**, Circuit Judges.

---

　　　In this pro se appeal, Tracy Leach challenges the entry of summary judgment in his civil action to recover disability benefits under the Employee Retirement Income Security Act (ERISA). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*]　　　After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

Russell Stover Candies, Inc. (RSC) administered a group disability plan for its employees through an insurance contract with Continental Casualty Company. Continental had discretionary authority to interpret the plan's terms and to determine eligibility for plan benefits. The plan defined "disability" as an injury or illness that renders an employee "continuously unable to perform the Material and Substantial Duties of [his or her] Regular Occupation," R., Doc. 18, Ex. 1 at 17, and it required "objective medical findings" as proof of disability, *id.* at 26.

Mr. Leach worked for RSC as a plant manager. His duties required, among other things, the abilities to walk, stand, sit, lift ten pounds, and "react under pressure and meet production needs on [a] daily basis" in a "[h]igh stress environment." *Id.* at 609. Mr. Leach's last work day was March 7, 2003, but he remained on the payroll for several months.

In June 2003, Mr. Leach applied for disability benefits. His family-practice physician, Dr. Mark Sheern, supplied a medical statement, listing Mr. Leach's conditions as coronary artery disease, recurrent headaches, and "probable autoimmune process." *Id.* at 635. Additionally, Dr. Sheern opined that Mr. Leach was "unable to lift repeatedly, stand for [an] extended period of time, [and] attend for a period of time to task without rest period." *Id.* at 636.

Continental referred Mr. Leach's file to Dr. Eugene Truchelut, an internist, who did "not see any findings on physical or laboratory examination which would

lead to recommendations for particular occupational restrictions with the exception that a subject who is taking Coumadin [a blood thinner] will need to be careful in certain hazardous workplace environments where lacerations, etc. could occur." *Id.* at 453. In December 2003, Continental denied Mr. Leach's application for benefits, explaining that there was "no documented medical information to support the physical limitations indicated by Dr. Sheern." *Id.* at 439. In particular, Continental noted that Dr. Sheern had told Dr. Truchelut that the limitations for Mr. Leach were based mostly on his reported symptoms. Mr. Leach retained counsel and appealed the denial of benefits to Continental.

Dr. Truchelut again reviewed the file and reported:

> To summarize, this is a 51-year-old man whose last date of work was over a year ago, and who has had established diagnoses of coronary artery disease treated by surgical and angioplastic means, localized bladder carcinoma, pulmonary embolism, cephalgia, and a hypercoagulable state . . . .
> . . . The additional information provided [from the appeal] does not contain reports of physical, laboratory, or radiological findings which would support on a continuous basis the broad restrictions provided [by Dr. Sheern] . . . .

*Id.* at 58-59. Continental also referred Mr. Leach's medical file to a second medical consultant, seeking correlation between Mr. Leach's claimed limitations and his medical conditions. The consultant, Dr. Mark Friedman, another internist, reviewed the file and concluded that "[t]he records do not support advanced heart disease that would limit walking, standing, and light lifting activities," *id.* at 52, "[n]o restrictions from a Urology point of view other than those noted related to

Coumadin would be appropriate," *id.* at 53, "[t]he [antiphospholipid antibody syndrome] findings would not explain his symptoms," *id.*, and "his restrictions and limitations would permit a sedentary to light occupation as of March 2003," *id.* Consequently, in August 2004, Continental affirmed its denial of benefits.

In November 2004, Mr. Leach, through counsel, sued Continental. Both parties moved for summary judgment based on the administrative record. On February 3, 2006, the district court granted Continental's motion and denied Mr. Leach's motion, ruling that

> [Mr. Leach] continued to work as a plant manager after numerous medical treatments for a variety of ailments, including the coronary problems . . . . On March 7, 2003, he terminated his employment and has not returned to work. [Continental's] desire to find objective medical evidence for why Leach became disabled at that time was not unreasonable, since the plan only provided coverage of conditions which were disabling while the worker was covered under the Plan. Here, the evidence in the record does not show that, on or before March 7, 2003, Leach was disabled from performing his job duties. The court finds that substantial evidence supports the decision of [Continental].

R., Doc. 26 at 16 (citation omitted).

On appeal, Mr. Leach argues that (1) his medical history proves that he is disabled; (2) RTC's production areas were "not condusive [sic] to someone on coumadin therapy," Aplt. Br. at 2; (3) Continental placed too much emphasis on Dr. Sheern; and (4) his illnesses progressively worsened from 1996 to 2004.

**DISCUSSION**

**I. Summary Judgment Standards**

We review the district court's summary judgment de novo. *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, we view the evidence and draw all reasonable inferences in the light most favorable to the party opposing summary judgment. *See Stover*, 382 F.3d at 1070.

**II. ERISA**

"[W]e review de novo the district court's application of the appropriate standards to a plan administrator's denial or grant of benefits under a plan." *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1167 (10th Cir. 2006). Where, as here, the benefit plan gives the administrator discretionary authority to determine eligibility for benefits and to construe the plan's terms, the administrator's actions are analyzed for arbitrariness and capriciousness. *Id.* But because of the inherent conflict of interest arising from Continental acting as both the insurer and the plan administrator, "we undertake a sliding scale analysis, where the degree of deference accorded the Plan Administrator is inversely related to the seriousness of the conflict." *Id.* at 1167-68 (quotations omitted).

Specifically, we require that "the plan administrator . . . demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." *Id.* at 1168 (quotation omitted).

"Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker." *Rekstad v. U.S. Bancorp*, 451 F.3d 1114, 1119-20 (10th Cir. 2006). In other words, it is more than a scintilla, but less than a preponderance. *Id.* at 1120.

After reviewing the record and the parties' briefs, we conclude that Continental reasonably interpreted the plan to require objective medical evidence of Mr. Leach's claimed disability, and that substantial evidence supports Continental's determination that he was not disabled under the plan.[1]

---

[1] Mr. Leach's argument that RTC's production "areas are not condusive [sic] to someone on coumadin therapy," Aplt. Br. at 2, is not supported by any reference to the record. And our independent review of the record has not uncovered any evidence that Mr. Leach's coumadin treatment prevented him from performing his duties. Dr. Truchelut stated that a person taking coumadin would need to be careful in hazardous work environments where lacerations could occur, R., Doc. 18, Ex.1 at 453, and Dr. Friedman suggested that such a person could not work in occupations requiring climbing or operating dangerous machinery, *id.* at 49. But Mr. Leach's duties apparently did not require climbing or operating dangerous machinery, and no hazards were listed on RTC's job-analysis form. *See id.* at 608-09.

The summary judgment is AFFIRMED for substantially the same reasons given by the district court in its February 3, 2006 Memorandum and Order.

Entered for the Court


Monroe G. McKay
Circuit Judge