FILED
United States Court of Appeals
Tenth Circuit

February 4, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROBERT H. DOVE,

      Plaintiff-Appellant,

v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

      Defendant-Appellee.

No. 09-3167
(D.C. No. 6:07-CV-01311-EFM-DWB)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **PORFILIO**, and **O'BRIEN**, Circuit Judges.

---

Robert H. Dove appeals from a district court's summary-judgment order in

his civil action brought under the Employee Retirement Income Security Act

(ERISA), 29 U.S.C. § 1132(a)(1). The issue in this case is whether an accident

was the independent cause of Dove's sight loss or whether the loss was

attributable to his pre-existing eye conditions. Prudential Insurance Company of

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

America found that it was the latter, and refused to pay benefits. The district court agreed. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

## BACKGROUND

In April 2005, Dove injured his right eye on the rim of a basketball goal. He later applied for accidental dismemberment benefits through his wife's employer, which maintained a benefits plan insured and administered by Prudential. As part of Dove's application, Dr. King Lee submitted an "Attending Physician's Statement" form, describing the injury as a "ruptured globe and collapsed eye[ ]." Aplt. App., Vol. 1 at A118. Dr. Lee indicated on the form that there were no "contributing diseases/medical conditions preceding th[e] accident." *Id.*

After reviewing Dove's medical records, Prudential denied Dove's application. Prudential noted that Dove had "a history of cataract removal with lens implant, retinal detachment repair and glaucoma all to his right eye." *Id.*, Vol. 2 at A334. It also noted that Dove's right eyesight six months before the accident was "OD 20/400 distance & 20/200 near."[1] *Id.* Prudential explained that

---

[1] The letters "OD" refer to "best correction for the right eye." American Medical Association, Guides to the Evaluation of Permanent Impairment 286 (6th ed. 2008) (italics omitted). The notation, "20/400" refers to visual acuity that is 1/20th the quality of the accepted performance standard. *See id.* at 285-86. Likewise, "20/200" refers to vision that equals 1/10th of that standard. *See id.* In other words, a person with 20/200 vision can see at 20 feet what a person with

(continued...)

-2-

the benefits plan covers a "total and permanent loss of sight" in one eye that occurred "*independently of all other causes*," and that it excludes from coverage any loss due to "*[b]odily or mental infirmity, disease of any kind or medical or surgical treatment for any such infirmity or disease*." *Id.* at A334-35. Prudential concluded that Dove "was permanently blind [in his right eye] prior to the traumatic global rupture," and therefore, he was not entitled to benefits. *Id.* at A335.

Dove sought reconsideration of the denial. In support of reconsideration, Dr. Charles Lederer wrote that five months before the accident Dove's "right eye was counting fingers at 3 feet without correction." *Id.*, Vol. 1 at A168.

Prudential upheld its decision, explaining that Dove's right eye already had a "severe loss of visual acuity attributable to other pre-existing eye problems." *Id.*, Vol. 2 at A251. Prudential did concede, however, that the accident "further damaged [Dove's] eye." *Id.* But it concluded that the damage from the accident "did not create a new circumstance." *Id.*

---

[1](...continued)
normal vision can see at 200 feet. *See id.*

Dove again sought reconsideration. This time, both Dr. Lederer and Dr. Lee wrote Prudential. Dr. Lederer stressed that less than two months before the accident,

> there was definitely some vision present. The vision in the right eye on that date was not adequate for fine visual tasks or driving, but the vision was not totally lost, and certainly would have been helpful for many essential tasks of daily living.

*Id.*, Vol. 1 at A165. Dr. Lee contrasted Dove's pre-accident and post-accident vision, stating that six months before the accident Dove's right-eye distance vision was 20/400 and his near vision was 20/100,[2] yet after the accident, Dove was limited to "light perception." *Id.* at A163.

Prudential again denied reconsideration, essentially repeating the grounds from its first reconsideration denial. But in reviewing Dove's second request for reconsideration, Prudential's medical director, Dr. Albert Kowalski, did not mention the recent letters from Drs. Lederer and Lee.[3] Further, Dr. Kowalski seems to have confused Dove's pre-accident vision with his post-accident vision. Specifically, Dr. Kowalski opined that Dove's accident did not cause his vision loss because Dove had "a visual acuity of 20/200 on 2/8/05 which is similar to his

---

[2]     The near vision reference of "20/100" appears to be a mistake. Dove's medical chart lists the near-vision number as "20/200," Aplt. App., Vol. 2 at A307, and Dr. Lee wrote the number as "20/200" when corresponding with another of Dove's physicians, *id.* at A284.

[3]     The denial letter, however, stated that Dr. Lederer's most recent letter had been considered. Dr. Lee's letter was not mentioned.

visual acuity in the right eye prior to the accident." *Id.* at A235. But the vision test on February 8, 2005, *was before* Dove's accident. In essence, Dr. Kowalski's statement means that Dove's vision before the accident was the same as his vision before the accident. There is no apparent explanation in the record for Dr. Kowalski's statement, and the parties' briefs do not mention it. Finally, the Prudential appeals committee relied on Dr. Kowalski's statement, *id.* at A233, and commented that the original denial of benefits was "based on the fact that [Dove] was *legally* blind" in the right eye before the accident, *id.* (emphasis added).

Dove then sued Prudential in federal district court, where the parties filed competing motions for summary judgment based on the administrative record. Ultimately, the district court granted Prudential's motion, stating that the "evidence indicated that [Dove] suffered permanent loss of vision prior to the accident and that the loss of sight in his right eye did not result from an accidental bodily injury that was independent of all other causes." *Id.*, Vol. 1 at A111.

Dove appeals.

### DISCUSSION

### I. Standards of Review

We review summary judgment orders de novo, applying the same standard as the district court. *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). Summary judgment is appropriate in an ERISA case if the administrative record shows there is no genuine issue as to any material fact and

-5-

that the moving party is entitled to judgment as a matter of law. *See id.*; Fed. R. Civ. P. 56(c)(2).

Where, as here, an ERISA benefit "plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits, we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1361 (10th Cir. 2009) (quotation omitted). "Under this arbitrary and capricious standard, we ask whether the administrator's decision was reasonable and made in good faith," *Phelan v. Wyoming Associated Builders*, 574 F.3d 1250, 1256 (2009) (quotation omitted), and this standard includes whether the decision is supported by substantial evidence, *see Adamson*, 455 F.3d at 1212. Substantial evidence is less than a preponderance, but more than a scintilla. *Adamson*, 455 F.3d at 1212.

When a plan administrator, like Prudential in this case, "both evaluates claims for benefits and pays benefits claims," there is a conflict of interest, *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008), which "should be weighed as a factor in determining whether there is an abuse of discretion," *id.* at 2350 (quotations omitted). This court recently described the treatment of such conflicts in light of *Glenn*:

> [A] conflict of interest affects the outcome at the margin, when we waver between affirmance and reversal. A conflict is more important when "circumstances suggest a higher likelihood that it affected the benefits decision," but less so when the conflicted party "has taken active steps to reduce potential bias and to promote accuracy."

*Hancock v. Metropolitan Life Ins. Co.*, No. 08-4161, 2009 WL 5103121, at *12

(10th Cir. Dec. 29, 2009) (quoting *Glenn*, 128 S. Ct. at 2351).

Prudential's conflict of interest is "but one factor among many that [we]

must take into account." *Glenn*, 128 S. Ct. at 2351.[4]  Accordingly, we must

examine Prudential's denial of benefits to see if it was arbitrary and capricious.

## II.  The Benefits Denial

As Prudential noted in its initial denial letter, the plan covers a "total and

permanent loss of sight" that occurred "independently of all other causes" and

was not "directly or indirectly" the result of a "[b]odily or mental infirmity,

disease of any kind, or medical or surgical treatment for any such infirmity or

disease."  Aplt. App., Vol. 1 at A138, A139.  Dove argues that Prudential acted

unreasonably in denying benefits because it failed to interpret the phrase, "loss of

sight," to mean a loss of "practical vision."  Aplt. Br. at 11, 13, 16, 21-22, 26, 29.

---

[4]     Dove argues that Prudential's conflict of interest necessitates that it bear
the burden of proving the reasonableness of its benefits denial.  Aplt. Br. at 10.
The Supreme Court in *Glenn*, however, rejected "special burden-of-proof rules, or
other special procedural or evidentiary rules, focused narrowly upon the
evaluator/payor conflict."  128 S. Ct. at 2351; *see also Hancock*, 2009 WL
5103121, at *12.

Dove offers no convincing authority to support this argument,[5] and the argument misapprehends the basis of the benefits denial.

Prudential denied benefits on the basis that Dove's pre-existing eye conditions contributed to his total and permanent loss of sight.[6] But there is no evidence in the record regarding such a contributing effect. In other words, nothing indicates how Dove's pre-existing eye conditions combined with the accident to produce the result. Nor is there any evidence about whether the accident, by itself, would have been sufficient to destroy Dove's sight. Instead, Prudential relied on the fact that it found Dove blind before the accident to conclude that the accident did not independently destroy his sight.

Nevertheless, Dove does make several cogent observations. First, he notes that "[t]he accident was the direct and independent cause of a diminution in the sight of Mr. Dove's right eye." Aplt. Br. at 28. Prudential conceded as much in its first denial of reconsideration, observing that the accident "further damaged

---

[5]　　For instance, Dove relies on *Order of United Commercial Travelers of Am. v. Knorr*, 112 F.2d 679 (10th Cir. 1940), to argue that "'loss of sight' has been uniformly held to mean a loss of 'practical vision.'" Aplt. Br. at 11. But *Knorr* was not an ERISA case, and it merely held that an insurance policy that lacked a definition for "loss of an eye" was not ambiguous because courts had uniformly interpreted it to mean that "the eye is no longer of some practical value or benefit." *Knorr*, 112 F.2d at 682. Here, in contrast, the Prudential plan contains a definition for "loss of sight," and that is "a total and permanent loss of sight." Aplt. App., Vol. 1 at A138.

[6]　　There appears to be no dispute that, following the accident, Dove's loss of sight was "total and permanent" under the plan.

-8-

[Dove's] eye." Aplt. App., Vol. 2 at A251. But Prudential made no attempt to determine whether that "further damage[ ]" caused Dove's total and permanent loss of sight. Instead, Prudential announced in its denial letters that the accident did not create a "new circumstance." *See id.* The phrase "new circumstance" is not in the benefit plan. "[W]here the administrator imposes a standard not required by the plan's provisions, . . . [the administrator's] actions may well be found to be arbitrary and capricious." *Pepe v. Newspaper & Mail Deliveries'-Publishers' Pension Fund*, 559 F.3d 140, 147 (2d Cir. 2009) (quotation omitted); *accord Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 541-42, & 542 n.14 (7th Cir. 1996)*; Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan*, 81 F.3d 335, 342-43 (3d Cir. 1996); *cf. Allison v. Bank One-Denver*, 289 F.3d 1223, 1236 (10th Cir. 2002) ("We have repeatedly rejected efforts to stray from the express terms of a plan, regardless of whom those express terms may benefit.").

Second, Dove notes that during the medical review process, Prudential described his pre-accident right eyesight as "legally" blind to infer that the accident was not the independent cause of his sight loss. Aplt. App., Vol. 2 at A231, A233, A235. But the benefit plan does not mention "legal" blindness, and we question its probative value. At least one prominent authority states that "*legal blindness* is a misnomer because 90% of individuals who have 20/200 or less visual acuity [i.e., legal blindness] are not blind but have *significant residual*

*vision* that can be enhanced through vision rehabilitation." American Medical Association, Guides to the Evaluation of Permanent Impairment 286 (6th ed. 2008) (second emphasis added). Indeed, Dr. Lederer stated that Dove had useful residual vision before the accident. Thus, the fact that Dove could be considered "legally" blind before the accident does not necessarily mean that the accident could not have been the independent source of his total sight loss.

Finally, Dr. Kowalski appears to have reached his opinion on the causal source of Dove's sight loss through a misunderstanding of the facts. Dr. Kowalski stated that Dove's visual acuity scores "on 2/8/05 [prior to the accident are] similar to his visual acuity in the right eye prior to the accident." Aplt. App., Vol. 2 at A235. While that statement is certainly true (in that it refers to only *one* visual acuity test), it provides absolutely no support for the process of determining causation by comparing pre-accident and post-accident vision.

Given Prudential's reliance on standards not contained in the benefits plan, and Dr. Kowalski's confusion regarding Dove's pre-accident visual acuity test, we conclude that Prudential's decision was arbitrary and capricious.[7] But "[t]his is not a case where it is so clear-cut that it was unreasonable for [Prudential] to deny [Dove] benefits." *Rekstad v. U.S. Bancorp*, 451 F.3d 1114, 1121 (10th Cir. 2006). On the one hand, Dove had significant pre-existing eye problems. On the

---

[7] While we note Prudential's conflict of interest in this case, nothing indicates that it affected the benefits denial, or that it is otherwise of any consequence on the record before us.

other hand, the accident worsened whatever eyesight he had. Specifically, Dr. Lederer noted that before the accident Dove's right eye could count fingers at three feet and "certainly" would have been useful in "tasks of daily living." Aplt. App., Vol. 1 at A165. Dr. Lee stated that no pre-existing medical conditions contributed to Dove's injury, *id.* at A118, and that Dove's right eye vision went from 20/400 (distance) and 20/200 (near) to only light perception after the accident. Between these two extremes lies the unresolved issue in this case: whether the accident was the independent cause of Dove's vision loss, such that it would have brought about the loss without the direct or indirect influence of Dove's pre-existing conditions. But there is no evidence in this case that untangles the physical effects of the accident from those of the pre-existing medical conditions. Moreover, we are not convinced that Prudential would reach the same conclusion in this case after restricting its medical review to the express terms of the plan and properly comparing Dove's pre- and post-accident vision.

Consequently, reconsideration by Prudential is the most prudent course of action. *Cf. Rekstad*, 451 F.3d at 1121 (reversing and remanding to the plan administrator where it was unclear whether substantial evidence supported the administrator's decision and there had been less than full consideration given to all the evidence).

-11-

**CONCLUSION**

We REVERSE the judgment of the district court and REMAND this matter to the district court with instructions that it order Prudential to reconsider Dove's application for benefits consistent with this court's decision.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge