**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 8, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MAZEN EISSA,

        Plaintiff-Appellant,

v.

AETNA LIFE INSURANCE
COMPANY,

        Defendant-Appellee.

No. 11-3273
(D.C. No. 6:09-CV-01268-MLB-KHM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

---

Mazen Eissa appeals from a district court judgment in favor of Aetna Life

Insurance Company in this action under the Employee Retirement Income

Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1). Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm the district court's grant of summary judgment

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

to Aetna on Mr. Eissa's claim for long term disability (LTD) benefits, but we reverse the court's award of damages to Aetna under the recoupment doctrine.

## I. Background

The Boeing Company Employed Mr. Eissa as an engineer in a sedentary job. Under the Boeing Long Term Disability Plan (Boeing Plan or Plan), employees who were totally disabled as a result of accidental injury or illness were eligible for LTD benefits. During the first 24 months of disability, the Boeing Plan's "own occupation" definition of disability applied, under which an employee was eligible for benefits if he was unable to "perform[] the material duties of [his] own occupation or other appropriate work the Company makes available." Aplt. App., Vol. 2 at 470. Thereafter, an employee was only eligible for LTD benefits under a stricter "any reasonable occupation" definition of disability, if his condition "prevent[ed] [him] from working at any reasonable occupation for which [he] may be fitted by training, education, or experience." *Id.* Aetna was the service representative of the Boeing Plan, with discretionary authority to determine whether and to what extent employees were entitled to benefits.

### A. Mr. Eissa's Disability Claim

Mr. Eissa claimed total disability due to depression, irritable bowel syndrome (IBS), colitis, and neck and back pain, as of May 6, 2005. On November 9, 2005, Aetna notified him that he was entitled to "own occupation"

benefits under the Boeing Plan. Aetna advised Mr. Eissa that, after November 4, 2007, he would need to satisfy the stricter "any reasonable occupation" definition of disability in order to continue to receive benefits. In addition, to the extent his disability was due to a mental condition, Aetna informed him that his coverage would be limited to a maximum of 24 months under the Plan.

The Boeing Plan provided that LTD benefits would be reduced if the employee received certain other income, including Social Security Disability (SSD) benefits. Aetna initially reduced Mr. Eissa's monthly LTD benefits by an estimated amount of the other benefits he may be awarded. He subsequently signed a Reimbursement Agreement with Aetna, in which Aetna agreed to pay him unreduced LTD benefits, and he agreed to reimburse Aetna for any overpayment made to him under the LTD policy. Mr. Eissa further agreed "that any benefits due [him] . . . under the LTD policy may be applied to any outstanding overpayment whether resulting from retroactive award of Social Security or any other income benefits as described in the LTD policy." *Id.*, Vol. 3 at 624.

On October 5, 2007, Aetna notified Mr. Eissa that his LTD benefits would cease on November 3, 2007. Aetna indicated that, although the information in his claim file continued to support a determination of disability based on recurrent major depressive disorder and post traumatic stress disorder, these conditions fell under the Boeing Plan's 24-month limitation for disability benefits based on

-3-

mental conditions. Aetna further "determined that the medical documentation [did] not support physical limitations and restrictions that would preclude [Mr. Eissa] from performing his own sedentary level of occupation." *Id.*, Vol. 4 at 833.

Mr. Eissa received notice from the Social Security Administration in November 2007 that he had been awarded SSD benefits. He received a lump sum payment for benefits retroactive to July 2005 and monthly payments going forward. After learning of Mr. Eissa's SSD award, Aetna informed him on March 10, 2008, that the Boeing Plan required a reduction in the amount of LTD benefits he had received through November 3, 2007. Aetna sought reimbursement from Mr. Eissa of an overpayment of $39,500. Shortly thereafter, he filed a bankruptcy petition, and the bankruptcy court entered a discharge order in his bankruptcy case on July 30, 2008.

Meanwhile, in April 2008, Mr. Eissa sought review of Aetna's termination of his LTD benefits. In response, Aetna reinstated his benefits pending its further consideration whether he met the "any reasonable occupation" definition of disability. (Although Aetna reinstated Mr. Eissa's LTD benefits, it withheld further payments to him in order to recover its overpayment resulting from his SSD award.) In connection with its further review of Mr. Eissa's claim, Aetna requested and received medical records from Dr. Dennis Knight, Mr. Eissa's primary care physician, and from Dr. Alonso Galvan, a gastroenterologist who

treated him for IBS. Aetna's clinician reviewed Mr. Eissa's file and concluded that the record failed to support gastrointestinal symptoms of a severity that would preclude him from performing his own occupation. The clinician noted that the record reflected "unremarkable physical examinations [and] no compelling abnormality of diagnostics." *Id.*, Vol. 6 at 1302.

Aetna next asked Dr. Stewart Shull, who is board certified in internal medicine with a subspecialty in gastroenterology, to conduct a physician review of Mr. Eissa's medical records, as well as a peer-to-peer consultation with Dr. Galvan. Dr. Shull concluded that the documentation and consultation "[f]ail[ed] to support functional impairment" from October 2007 through October 2008, and "[t]he only accommodation necessary would be proximity to a restroom." *Id.*, Vol. 4 at 936.

After Dr. Shull's physician review, Aetna referred Mr. Eissa's file to its Vocational Rehabilitation Consultant, Elayne Goldman, to determine if he had transferrable skills and whether there were sedentary occupations he could perform. She identified several sedentary-level engineering occupations and completed a labor market analysis. Ms. Goldman concluded that the identified jobs existed in Mr. Eissa's area and afforded reasonable wages. In the notes accompanying her report, Ms. Goldman referenced Dr. Shull's opinion that proximity to a restroom was a necessary accommodation for Mr. Eissa.

Aetna notified Mr. Eissa that it had determined he was capable of working at a reasonable occupation. Consequently, Aetna again terminated his LTD benefits effective October 22, 2008. Mr. Eissa sent Aetna a notice of appeal on May 5, 2009. He attached documentation, including: additional medical records and an opinion from Dr. Knight; a log Mr. Eissa prepared of the frequency, duration, and urgency of his bowel movements during a 30-day period (Bathroom Log); a vocational report prepared by Karen Terrill, a Vocational Rehabilitation Consultant; a letter indicating that Mr. Eissa's deposition in another case had to be rescheduled due to a flare-up of his IBS; and additional medical records from Dr. Galvan.

Ms. Terrill's vocational report concluded:

Mr. Eissa, due to his medical condition and the need to utilize the restroom as dictated by his bowel movements, is unable to meet . . . industry standards [for breaks from work]. He would be unable to take breaks at a set time since his bowel movements are unpredictable. At times he needs restroom access within a minute['s]s notice. He is unable to control his bowel movements to fit within normal break standards of 10 to 15 minutes or even a longer lunch break of 30 minutes to an hour. At times, he needs to be in the bathroom for over an hour at a time. His condition is such that he can not meet normal industry standards relating to breaks so would be unable to engage in any type of employment. He does not retain the ability to earn any wage.

*Id.*, Vol. 5 at 1114. In a Statement of Treating Physician, Dr. Knight opined that the entries in Mr. Eissa's Bathroom Log were consistent with his medical condition of IBS, which he described as "a chronic permanent and lifetime

condition." *Id.* at 1054. Dr. Knight stated that Mr. Eissa's IBS could not be relieved further "because he has been treated aggressively for the past 3 [years] without resolution or improvement." *Id.*

Aetna asked Dr. Timothy Craven to perform an independent physician review of Mr. Eissa's file. Dr. Craven is certified by the American Board of Preventative Medicine and has a general certification in occupational medicine. He reviewed 140 pages of medical records and all of the additional documentation that Mr. Eissa had submitted with his appeal. In his report, Dr. Craven summarized Dr. Knight's office notes from his examinations of Mr. Eissa, the Bathroom Log, and Ms. Terrill's conclusions in her vocational report. He concluded that the documentation "[f]ail[ed] to support functional impairment" from October 2008 to June 2009. *Id.*, Vol. 3 at 515. Dr. Craven stated,

> [Mr. Eissa] has been diagnosed with irritable bowel syndrome and neck pain, but he should be able to work in spite of those problems. He is under treatment and does have to use the bathroom frequently but should be able to do some job. He would need to be accommodated so he is close to a bathroom and be able to take short breaks to go to the bathroom but should be able to work in spite of these medical problems. His medical condition is not severe enough that would preclude him from performing the duties of any occupation.

*Id.*

Mr. Eissa subsequently submitted to Aetna a Statement of Treating Physician from Dr. Galvan, who described the future duration of his IBS condition as "unknown," adding, "I have never seen a case of disability due to

IBS, or a resistance to most forms of therapy. All cases of true IBS I have ever treated are functional and productive and employed persons." *Id.*, Vol. 5 at 1125. The doctor also stated, "[Mr. Eissa] has been resistant to multiple forms of therapy and obviously it is not to his advantage to get well. . . ." *Id.* Regarding the Bathroom Log, Dr. Galvan said it did not reflect "fair control" and that Mr. Eissa had not made him aware of "the inordinate length of time he spends in the bathroom." *Id.* The doctor commented, "The veracity of this is the [question]." *Id.* Dr. Craven prepared an addendum report finding that Dr. Galvan's opinion did not change the conclusion he had reached in his original report.

Aetna notified Mr. Eissa by letter dated July 1, 2009, of its determination to uphold the termination of his LTD benefits. In its decision, Aetna first recounted Ms. Goldman's analysis of the sedentary jobs Mr. Eissa was capable of performing. After listing the documentation that Mr. Eissa had submitted in support of his appeal, Aetna summarized Dr. Craven's report. Aetna concluded, "Based upon our review of the submitted documentation, and the rationale detailed herein, we have determined that there was insufficient medical evidence to support functional restrictions of such severity that prevented Mr. Eissa from performing any reasonable occupation as of October 22, 2008, and beyond." *Id.*, Vol. 3 at 506.

## B. District Court Action

Mr. Eissa filed this action under ERISA, 29 U.S.C. § 1132(a)(1), seeking a judgment awarding him LTD benefits under the Boeing Plan after October 22, 2008. Aetna's amended answer to the complaint asserted the affirmative defense of recoupment, stating, "If Plaintiff is entitled to payment of benefits, as he alleges, Aetna is entitled to recoupment of the remainder of its previous overpayment of benefits to Plaintiff, which is $28,642.34." Aplt. App., Vol. 1 at 18.

Mr. Eissa and Aetna filed cross motions for partial summary judgment on Aetna's recoupment defense. The district court noted Aetna's argument that, despite Mr. Eissa's discharge in bankruptcy, if it was determined that he was entitled to ongoing LTD benefit payments, Aetna could recoup its prior overpayment by offsetting LTD benefit payments against the amount of the overpayment. The district court granted Aetna's motion, holding for purposes of recoupment that Aetna's obligation to make monthly LTD benefit payments, and Mr. Eissa's obligation to reimburse Aetna for the overpayment, arose from a single, integrated transaction. The court further concluded, "As a result, Aetna is entitled to recoup the overpayment made to Eissa *should it succeed in this case*." *Id.*, Vol. 2 at 299 (emphasis added).

The parties next filed cross motions for summary judgment on the question of Mr. Eissa's entitlement to LTD benefits. Applying an arbitrary and capricious

standard of review, the district court granted Aetna's motion. Consistent with its partial summary judgment ruling, the court further held that "[Aetna] is entitled to the recoupment of its overpayment in the amount of $28,642.34." *Id.*, Vol. 9 at 1929. The district court then entered judgment in Aetna's favor in that amount "in damages for overpayment of benefits." *Id.* at 1931.

Mr. Eissa filed a motion for reconsideration, asking the district court to "modify its order to indicate that Aetna is not entitled to recoupment because [Mr. Eissa] did not win the case." *Id.* at 1933. He argued:

> The overpayment was discharged in bankruptcy. Aetna is not entitled to recover its overpayment except by reducing benefit payments should it be obligated to make benefit payments, thus, recoupment by Aetna if Eissa won the case on the merits. Because Eissa did not prevail on the merits, recoupment is not available for Aetna.

> Aetna is not entitled to a judgment in its favor of $28,642.34, or in any amount.

*Id.* at 1932-33 (citation omitted). The district court denied Mr. Eissa's motion for reconsideration, and he filed a timely notice of appeal.

## II. Discussion

Mr. Eissa argues that Aetna failed to provide a full and fair review of his claim for LTD benefits because (1) Aetna failed to consider all of the evidence he submitted, specifically his Bathroom Log; (2) Ms. Goldman's vocational report was fatally flawed because it did not consider his Bathroom Log; (3) Aetna failed to provide a rationale for refusing to credit Ms. Terrill's vocational report; and

(4) Aetna relied on a conclusory vocational opinion by Dr. Craven, who does not have vocational expertise.  In addition, Mr. Eissa argues the district court erred by awarding Aetna damages under the doctrine of recoupment when he did not prevail on his claim for LTD benefits.

## A.  Standards of Review

Where an ERISA plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, "we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious."  *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011) (quotations omitted).  The district court found, and the parties do not dispute, that the Boeing Plan administrator has discretionary authority.  Therefore, the arbitrary and capricious standard of review is the applicable standard in this case with respect to Mr. Eissa's claim for LTD benefits.

Under that standard, "our review is limited to determining whether the interpretation of the plan was reasonable and made in good faith."  *Id.* (quotations omitted).  "We will uphold the decision of the plan administrator so long as it is predicated on a reasoned basis, and there is no requirement that the basis relied upon be the only logical one or even the superlative one."  *Id.* at 1134 (quotations omitted).  "The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end."

*Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (quotation and brackets omitted). "Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002).

We review de novo the district court's grant of partial summary judgment in favor of Aetna on its recoupment defense. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## B. Denial of LTD Benefits

### 1. Failure to Consider All of the Evidence

Mr. Eissa first argues that Aetna failed to consider all of the evidence that he submitted after Aetna's October 22, 2008, termination of his LTD benefits. He points to Aetna's reliance on Ms. Goldman's vocational report, which was prepared before he submitted his Bathroom Log and not supplemented thereafter. Mr. Eissa's theory is that, by relying on Ms. Goldman's report, Aetna failed to consider his Bathroom Log.

We reversed a plan administrator's denial of benefits as arbitrary and capricious when it "failed to examine a material portion of the relevant evidence." *Rekstad v. U.S. Bancorp*, 451 F.3d 1114, 1120 (10th Cir. 2006). In *Rekstad*, the plan administrator's agent concluded that certain evidence submitted by the

claimant was not pertinent to the disability determination and therefore the agent did not consider it. We held that the evidence was relevant and material, and the plan administrator's decision denying disability benefits, which was based on the agent's review, was arbitrary. *See id.* at 1120-21.

In contrast to *Rekstad*, there is no indication here that Aetna refused to consider Mr. Eissa's Bathroom Log. The record reflects that Dr. Craven reviewed that evidence in connection with his independent physician review, and Aetna relied on Dr. Craven's opinion in its determination. Aetna also explicitly listed the Bathroom Log, as well as all of the other documentation Mr. Eissa submitted after October 22, 2008, as included in the evidence that Aetna considered in making its determination. Mr. Eissa has not established that Aetna failed to consider all of the evidence.

## 2. Reliance on Ms. Goldman's Vocational Report

Mr. Eissa next argues that Ms. Goldman's vocational report was "fatally flawed" because she did not supplement her report to take into account the later-recorded data in his Bathroom Log. Aplt. Br. at 16. He contrasts Ms. Goldman's report with Ms. Terrill's report, which directly addressed the information in his Bathroom Log. He maintains that Aetna's decision to uphold the termination of his LTD benefits was arbitrary and capricious because it relied on Ms. Goldman's report.

Aetna responds that it was required to consider the record as a whole in making its determination, and Ms. Goldman's report was one piece of the evidence. Aetna also points out that Ms. Goldman was aware of Dr. Shull's opinion that the only accommodation Mr. Eissa needed was proximity to a restroom. Aetna argues that aspect of Dr. Shull's report was substantially similar to Dr. Craven's later finding, *after* he reviewed the Bathroom Log, that Mr. Eissa would need to be close to a bathroom and able to take short breaks. Moreover, Aetna notes that Ms. Terrill did not have access to all of the relevant evidence when she prepared her vocational report, notably Dr. Galvan's later-provided statement questioning the credibility of Mr. Eissa's reported symptoms in his Bathroom Log.

We agree with Aetna. Although Ms. Goldman completed her report before Mr. Eissa submitted his Bathroom Log, and did not supplement it in light of that evidence, it was not arbitrary or capricious for Aetna to rely on that report in making its disability determination. Aetna's reliance on Ms. Goldman's report was not unreasonable in light of the totality of the evidence in the record.

### 3. Failure to Provide Rationale for Rejecting Ms. Terrill's Report

In terminating Mr. Eissa's LTD benefits, it is clear that Aetna did not accept Ms. Terrill's conclusion that he was unable to engage in any type of employment. Mr. Eissa contends that Aetna's decision was arbitrary and capricious because it did not provide an explicit rationale for rejecting that

-14-

conclusion. Citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003), Aetna maintains that it was not required to do so under ERISA. *Nord* held that "courts [may not] impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* Aetna contends that the same rule should apply to expert opinions on vocational issues, and that here, Aetna credited other reliable evidence in the record that conflicted with Ms. Terrill's report.

"Plans must 'provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.'" *Id.* at 830 (quoting 29 U.S.C. § 1133(1)). In construing what is required by § 1133, *Nord* concluded that ERISA "does [not] impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Id.* at 831. Mr. Eissa cites nothing to support a different rule with regard to opinions of vocational experts, and he fails to establish that Aetna's decision was arbitrary and capricious because Aetna did not further explain its rejection of Ms. Terrill's report.

### 4. Dr. Craven's Lack of Vocational Expertise

In his final contention regarding termination of his LTD benefits, Mr. Eissa asserts that Aetna was required to support its conclusion he could work in "any reasonable occupation" with a vocational analysis prepared by a person with the

appropriate education and training. He notes that Aetna relied on Dr. Craven's opinion that, with two specified accommodations, Mr. Eissa should be able to work in spite of his medical conditions, which Dr. Craven concluded were not severe enough to preclude him from performing the duties of any occupation. Mr. Eissa maintains that Aetna's determination was arbitrary and capricious because expert vocational evidence is required, and Dr. Craven lacks the necessary vocational expertise.

Mr. Eissa's contention misstates the law. In *Caldwell*, 287 F.3d at 1289, we rejected a claimant's argument that expert vocational evidence is "*required* before an administrator determines whether or not a claimant is indeed disabled under the 'any occupation' standard." We instead concluded that

> whether a claims administrator must consider vocational or occupational evidence in reaching its determination to deny a claimant "any occupation" benefits depends on the circumstances of the particular case and the terms of the benefits plan. If a claims administrator can garner substantial evidence to demonstrate that a claimant is, in fact, able to perform other occupations (within the definition set out by the insurer) in the open labor market, then consideration of vocational expert evidence is unnecessary.

*Id.* at 1290. We cautioned that our holding did not mean vocational evidence is never required, but only that it is not required in every case. *See id.*

Mr. Eissa makes only the general argument, rejected in *Caldwell*, that vocational evidence is always required. He advances no argument that, *in this case*, vocational evidence was necessary for Aetna to conclude that his medical

conditions were not serious enough to preclude him from performing any reasonable occupation.

We agree with Aetna that its reliance on Dr. Craven's opinion, despite his lack of vocational expertise, did not render its determination arbitrary and capricious. Dr. Craven opined, based on the medical evidence, that Mr. Eissa would need only two accommodations—a bathroom nearby and an ability to take short breaks—and he concluded that Mr. Eissa should be able to perform work activity with those accommodations. *See id.* at 1289 (citing with approval First Circuit case holding that vocational evidence was not necessary where reviewing physicians concluded claimant had only minor restrictions on ability to work). Moreover, Aetna did, in fact, rely on expert vocational evidence in making its determination, and we have already rejected Mr. Eissa's contention that Ms. Goldman's report was fatally flawed. Mr. Eissa fails to show that Aetna's decision was arbitrary and capricious based on Dr. Craven's lack of vocational expertise.

Finding no merit to Mr. Eissa's contention that Aetna's termination of his LTD benefits was arbitrary and capricious, we affirm the district court's grant of summary judgment in favor of Aetna on that claim.

### C. Judgment in Favor of Aetna Under Recoupment Doctrine

Mr. Eissa contends that the district court erred in awarding damages to Aetna in the amount of its overpayment to him. In response to Mr. Eissa's

complaint, Aetna asserted recoupment as an affirmative defense. Aetna contended in its amended answer, as well as in its motion for partial summary judgment, that if Mr. Eissa was entitled to ongoing benefits, Aetna was entitled to recoupment of the remainder of its previous overpayment to him. In ruling on the parties' cross motions for partial summary judgment on Aetna's recoupment defense, the district court concluded that Aetna's obligation to make monthly LTD benefit payments to Mr. Eissa, and Mr. Eissa's obligation to reimburse Aetna for the overpayment, arose from a single, integrated transaction. *See Beaumont v. Dep't of Veterans Affairs (In re Beaumont)*, 586 F.3d 776, 781 (10th Cir. 2009) (holding obligations of parties arose from same transaction where defendant's obligation to pay pension benefits was contingent on the amount of plaintiff's other income). Mr. Eissa does not challenge this aspect of the district court's ruling. But the court went on to hold, "As a result, Aetna is entitled to recoup the overpayment made to Eissa *should it succeed in this case*." Aplt. App., Vol. 2 at 299 (emphasis added). Mr. Eissa contends that Aetna was only entitled to recoupment of its overpayment if he prevailed on his claim for LTD benefits.

We agree. *In re Beaumont* described the circumstances under which recoupment from a debtor is available:

> "Recoupment" is an equitable doctrine in bankruptcy that allows one party in a transaction to withhold funds due another party where the debts arise out of the same transaction. In other words, the doctrine

-18-

allows a creditor to recover pre-petition debt out of payments owed to the debtor post-petition.

586 F.3d at 780 (citation and quotation omitted). Thus, recoupment is an exception to the "fundamental tenet of bankruptcy law . . . that a petition for bankruptcy operates as a 'cleavage' in time. [Ordinarily, o]nce a petition is filed, debts that arose before the petition may not be satisfied through post-petition transactions." *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.)*, 782 F.2d 155, 158 (10th Cir. 1986). Recoupment is also an exception to the discharge rule. *See In re Beaumont*, 586 F.3d at 777. As such, "[r]ecoupment is narrowly construed in bankruptcy cases because it violates the basic bankruptcy principle of equal distribution to creditors." *Conoco, Inc. v. Styler (In re Peterson Distrib., Inc.)*, 82 F.3d 956, 959 (10th Cir. 1996) (quotation omitted).

The reasoning behind allowing recoupment in the bankruptcy context is "that a debtor who assumes the favorable aspects of the contract (post-petition performance) also must take the unfavorable aspects of the same contract (obligation to repay pre-petition overpayments)." *In re B & L Oil*, 782 F.2d at 157. Thus, *In re Beaumont* affirmed the bankruptcy court's holding that the Veterans Administration could withhold post-bankruptcy pension payments due the plaintiff in order to recoup a pre-bankruptcy overpayment resulting from other income the plaintiff failed to disclose. *See* 586 F.3d at 781 ("[I]t would be inequitable for the Plaintiff to receive his inheritance, continue to receive benefits

as if his income was zero, then be able to discharge in bankruptcy the overpayments once it was determined that he had been overpaid.").

Aetna does not cite, and we have not found, any case applying the doctrine of recoupment as a means for a creditor to recover a judgment for damages from the debtor after prevailing on the debtor's offsetting claim. The recoupment analysis looks at whether the debtor's and creditor's obligations to each other arose from the same transaction, such that one could be offset against the other. *See Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1537 (10th Cir. 1990) (characterizing recoupment as an "offset").[1] The issue arises where a creditor is attempting to avoid full liability on the debtor's claim, as in this case. *See In re Peterson Distrib.*, 82 F.3d at 959 ("Recoupment allows the defendant, in a suit between the estate and another, to show that because of matters arising out of the transaction sued on, he or she is not liable in full for the plaintiff's claim.") (quotation omitted)).[2] Thus, recoupment is "essentially a defense to the debtor's

---

[1]    We note that, in the bankruptcy context, "setoff" and "recoupment" are discrete concepts. "Setoff . . . gives a creditor the right to offset a mutual debt owing by such creditor to the debtor provided that both debts arose before commencement of the bankruptcy action and are in fact mutual. The creditor's mutual debt and claim generally arise from *different* transactions." *In re Peterson Distrib.*, 82 F.3d at 959 (citation and quotation omitted). Aetna pled, but did not pursue a setoff defense in this case.

[2]    In other cases, the debtor raises a challenge to the creditor's withholding of payments on an ongoing obligation after the debtor's bankruptcy filing and discharge, in order to recoup a pre-petition debt. *See In re Beaumont*, 586 F.3d at 777 (holding that withholding of payments by creditor was permitted under

(continued...)

claim against the creditor." *In re Davidovich*, 901 F.2d at 1537 (quotations

omitted); *see also Sigman v. Aetna Life Ins. Co. (In re Sigman)*, 270 B.R. 858,

862 (Bankr. S.D. Ohio 2001) ("The right to recoupment does not give a right to

actual payment[;] it is not a claim."). The Supreme Court has likewise

characterized recoupment as a defense. *See Beach v. Ocwen Fed. Bank*, 523 U.S.

410, 415 (1998) (describing recoupment as "a defense arising out of some feature

of the transaction upon which the plaintiff's action is grounded" (quotations

omitted)).[3]

The right to recoupment by a creditor therefore depends on the existence of

a successful claim by the debtor arising from the same transaction as the

creditor's claim. *See In re Peterson Distrib.*, 82 F.3d at 960 ("[R]ecoupment

functions like a security interest, in that it grants priority to a creditor's claim in

_____

[2](...continued)
recoupment doctrine and did not violate automatic stay or discharge injunction).

[3]     According to one treatise:

> In any action between the estate and another, the defendant is
> entitled to show through recoupment that he or she is not liable in
> part or in full for the plaintiff's claim due to matters or events arising
> out of the same transaction. As long as this right of reduction is
> asserted as a defense and not as an independent claim for relief, it
> does not constitute a "claim," nor is there any aspect of a preference
> about it. In proper form, a right of recoupment is merely a defensive
> right that assists in the just and proper determination of the
> defendant's liability.

Matthew Bender & Co., Inc., Collier Bankruptcy Manual ¶ 553.09 (3d rev. ed.
2011) (footnotes omitted).

the bankruptcy estate in so far as the estate has a claim against the creditor arising from the 'same transaction' as the creditor's claim."). Here, Mr. Eissa did not succeed on his claim that Aetna owed him ongoing LTD benefits. Therefore, Aetna has no payment obligation to Mr. Eissa against which it can recoup its overpayment. Under these circumstances, Aetna's claim for recovery of its overpayment, like any other creditor's claim, is subject to Mr. Eissa's discharge in bankruptcy. And there is no inequity in subjecting Aetna to the same treatment as Mr. Eissa's other creditors. *See id.* at 963 (holding creditor not entitled to recoupment and concluding "[w]e see no reason why [creditor] deserves to be treated more favorably than other unsecured creditors in this case.").

Because the district court erred in awarding damages to Aetna under the doctrine of recoupment, we reverse that portion of the court's judgment.

The judgment of the district court is AFFIRMED in part and REVERSED in part.

Entered for the Court


Wade Brorby
Senior Circuit Judge